# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Joseph A. Kinsella, as Administrator and
personal representative of the Estate of
Katherine Kinsella, and Joseph A. Kinsella,
individually and on behalf of all distributees
of Katherine Kinsella, deceased,

           Plaintiffs

        v.

Wyman Charter Corp., Michael P. Wyman,
Joseph Jay Shore, Cord Mitchell Shore,
Caralyn Shore, Toad Hall Corp., Ian
McColgin, the Motor Vessel "Sea Genie II,"
her engines, tackle and appurtenances, in rem,
the Sailing Vessel "Granuaile," her engines,
tackle and appurtenances, in rem,

           Defendants.

Civil Action No: 04-11615 (NMG)
(consolidated)

**STIPULATION OF
DISMISSAL**

**IT IS HEREBY STIPULATED AND AGREED,** by and among counsel for all

parties who have appeared in the within action, that the within action, as consolidated, and all claims,

counterclaims, cross-claims and third-party claims, be and the same hereby are dismissed, with

prejudice, without costs and without attorney's fees pursuant to Fed.R.Civ.P. 41(a)(1)(ii).

Dated: April 24, 2006

FRIEDMAN & JAMES LLP
Attorneys for Plaintiffs

By _____
Andrew V. Buchsbaum, of Counsel*
132 Nassau Street, Suite 900
New York, NY 10038
telephone: 212- 233-9385
facsimile: 212-619-2340
*admitted *pro hac vice*

DONOVAN HATEM LLP
Attorneys for defendants Joseph Shore, Cord
Mitchell Shore, Carylyn Shore and Toad
Hall Corp.

By _____
Paul G. Boylan, Esq. BBO # 052820
World Trade Ctr East, Two Seaport Lane
Boston, MA  02210
telephone: 617-406-4500
facsimile: 617-406-4501

CURLEY & CURLEY, P.C.
Attorneys for defendant Insurance
 Company of North America

By _David D. Dowd_ (signature)
David D. Dowd, Esq. BBO # 132660
27 School Street
Boston, MA   02114-4737
telephone: 617-523-2990
facsimile: 617-523-7602


LOONEY & GROSSMAN LLP
Attorneys for Defendant Wyman
 Charter Corp.


By_____
Bertram E. Snyder, Esq. BBO # 471320
101 Arch Street
Boston, MA   02110-1112
telephone: 617-951-2800
facsimile: 617-951-2819

SUGARMAN, ROGERS, BARSHAK &
COHEN, P.C.
Attorneys for Defendant General Star
 Indemnity Company


By_____
Samuel M. Furgang, Esq. BBO # 559062
101 Merrimac Street
Boston, MA   02114-4737
telephone: 617-227-3030
facsimile: 617-523-4001


CLINTON & MUZYKA, P.C.
Attorneys for Defendant Michael P. Wyman

By _Thomas E. Clinton_ (signature)
Thomas E. Clinton, Esq. BBO # 086960
One Washington Mall, Suite 1400
Boston, MA   02108
telephone: 617-723-9165
facsimile: 617-720-3489

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF EASTERN MASSACHUSETTS

| | |
|---|---|
| JOSEPH A. KINSELLA, et al. ) | |
| Plaintiffs, ) | |
| v. ) | |
| WYMAN CHARTER CORP., ) | CIVIL ACTION NO. 04-11615-NMG |
| MICHAEL P. WYMAN, JOSEPH SHORE, ) | (JUDGE NATHANIEL M. GORTON) |
| CORD SHORE, CARYLYN SHORE, et al. ) | |
| Defendants. ) | |

## AFFIDAVIT IN OPPOSITION TO MOTION FOR JUDGMENT AS TO SETTLEMENT

Carylyn Shore being sworn states as follows:

1.    My name is Carylyn Shore.   My husband, my son, and I are defendants in this action.

2.    I attended a mediation at which time this action was settled.  During the course of the negotiations and discussions that day in the presence of Andrew Buchsbaum, attorney for the plaintiffs and in the presence of other persons, I made known that the Shore defendants would need time to make the Shore payments and had no available cash. The attorney for the Kinsella family, Buchsbaum, nodded and agreed  that he would and could on behalf of plaintiffs work that out.  Based on that conversation at that time and at later points in the negotiation, we did make a commitment to pay a portion of the settlement in this matter.  We did so understanding and relying on the promise by Mr. Buchsbaum that he would work with us on a payment schedule over time consistent with our ability to pay.

3.    My income and that of my husband derives from operation of a parking lot in Hyannis, Massachusetts. Plaintiff's attorney knows this. Parking lot revenues are entirely seasonal. This spring 2006 has been particularly bad because of the rain. Employees and other expenses remain fixed. The parking lots, which service fishing boats and other ocean going vessels for tourism, were virtually empty throughout the months of April, May and parts of early June.

4.    Despite the decreased revenue in the Spring of 2006 I authorized our attorneys in connection with the settlement to offer a payment program which would involve $35,000 to be paid July 15, 2006, with a further payment if possible in September, 2006, $35,000 to be paid July 15, 2007, a further $35,000 if possible September, 2007, and on a worst case scenario, the last payment on July 15, 2008. We would make payments sooner if the cash becomes available.

5.    My husband, my son, and I are not able to borrow funds at this time because our income is not adequate to satisfy banks. The assets that we own for example, our home in Newton, is subject to mortgages or liens and is very recently subject to a lien to the Internal Revenue Service. The I.R.S. recently gave notice of a lien served on us in June 2006 in the amount of $173,496. A copy of that I.R.S. notice is attached. We provided a copy of this Notice to counsel for the plaintiff on or about June 21 when we were recently trying to work out a payment schedule with Mr. Buchsbaum prior to the filing of the motion.

6.    I am informed that when this topic was discussed by phone and email on June 16, 2006 and later the Kinsella attorney, Mr. Buchsbaum, conceded that he has known at all times that the Shore payment would require installments and adequate time for the

making of the payments. Attached hereto is an email dated June 16, 2006 where Mr. Buchsbaum writes, in connection with a payment schedule for the Shore defendants "I need something concrete from your clients that is reasonable. I cannot leave it open ended." (emphasis added). That email was in rejection of the schedule in paragraph 4 as involving lengths or dates.

7.    We are willing to make a partial payment of $35,000 as part of an agreement consistent with our limited resources. .

## VERIFICATION

The undersigned hereby states that she has read the foregoing and that the facts herein are true based on personal knowledge, except for those matters stated on information, and those are believed to be true based on the information and documents presently available and made available to the undersigned.

SIGNED UNDER THE PENALTIES OF PERJURY.

Dated:                                        _Carylyn Shore_
                                              Carylyn Shore

01014496

# EXHIBIT C

CURLEY & CURLEY, P.C.
ATTORNEYS AT LAW
27 SCHOOL STREET
BOSTON   MASSACHUSETTS   02108

———

(617) 523-2990
FACSIMILE (617) 523-7602

ROBERT A. CURLEY, JR.
EUGENE F. NOWELL
DAVID D. DOWD
MARTIN J. ROONEY*
LISABETH RYAN KUNDERT
STEPHEN J. GILL
JONI KATZ MACKLER
KIM M. ROUSSOS
LISA M. CAPERNA

ROBERT A. CURLEY, RETIRED

WRITER'S E-MAIL ADDRESS:
ddd@curleylaw.com

*ALSO MEMBER OF NEW HAMPSHIRE BAR

June 2, 2006

Andrew V. Buchsbaum, Esquire
Friedman & James LLP
132 Nassau Street
Boston, MA   02110

**Re:    Kinsella v. Wyman Charter Corp., et al.**
**U.S. District Court C.A. No. 05-10232-NMG**

Dear Andrew:

I enclose INA's settlement draft in the amount of $218,552.00.

Thank you for your courtesy throughout this case.

Very truly yours,

David D. Dowd

DDD:es
Enclosure
cc:    Paul G. Boylan, Esquire (w/enc.)
       Samuel M. Furgang, Esquire (w/enc.)
       Bertram E. Snyder, Esquire (w/enc.)
       Thomas E. Clinton, Esquire (w/enc.)

ACE PROPERTY AND CASUALTY COMPANIES
140 BROADWAY, 40TH FLOOR
NEW YORK NY 10005

DATE 05/27/06

CHECK NO. **BN06057433**

## STATEMENT

ACE Property and Casualty Insurance Company
Westchester Fire Insurance Company
and Affiliated Insurers



5900A31BN 00    00109 BN06057433
CURLEY & CURLEY, PC
ATTN: DAVID DOWD
27 SCHOOL STREET
BOSTON MA 02108

| FILE ID | DOLLARS |
|---|---|
| 450S9304064 | S\*\*\*\*218,552.00 |

\* NOT NEGOTIABLE \*

| FOR |  |
|---|---|
| FULL & FINAL SETTLEMENT | |
| CLAIMANT | DATE OF EVENT |
| KINSELLA;CATHERINE | 07/22/01 |

**Questions with regard to this payment should be referred to your agent or the Customer Service Unit of the Claim Office whose address appears above.**

---

## DETACH THIS PORTION BEFORE CASHING

P2100Y (10/2005)

THIS MULTI-TONE AREA OF THE DOCUMENT CHANGES COLOR GRADUALLY AND EVENLY FROM DARK TO LIGHT WITH DARKER AREAS BOTH TOP AND BOTTOM
ACE Property and Casualty Insurance Company
Westchester Fire Insurance Company
and Affiliated Insurers

**BN06057433**

| FILE ID |  |
|---|---|
| 450S9304064 | Fleet National Bank, Hartford, CT |

| DATE | PLEASE DEPOSIT or CASH WITHIN 90 DAYS | 51-44 119 |
|---|---|---|
| 05/27/06 | | |

| DOLLARS |
|---|
| S\*\*\*\*218,552.00 AND 00 CENTS |

POLICY
HOLDER ►

\*\*TWO HUNDRED EIGHTEEN THOUSAND FIVE HUNDRED FIFTY TWO DOLLARS AND 00 CENTS

FOR ►  FULL & FINAL SETTLEMENT

*Francis W. McDonnell*

AUTHORIZED SIGNATURE

PAY TO THE ORDER OF
JOSEPH A. KINSELLA AS ADMINISTRATOR
AND ANDREW N. BUCHSBAUM AS ATTNY
132 NASSAU ST, STE 900
NEW YORK NY 10038

| CLAIM OFFICE | SPECIAL HANDLING |
|---|---|
| NEW YORK APL BROKER | 00 |
| CLAIMANT | |
| KINSELLA;CATHERINE | |

# EXHIBIT D

**Paul Boylan**

| | |
|---|---|
| **From:** | Andrew V. Buchsbaum, Esq. [abuchsbaum@friedmanjames.com] |
| **Sent:** | Friday, June 16, 2006 11:05 AM |
| **To:** | Paul Boylan |
| **Subject:** | RE: Kinsella |

I need something concrete from your clients that is reasonable.  I cannot leave it open ended.

Andrew V. Buchsbaum, Esq.
abuchsbaum@friedmanjames.com
direct dial:  (212) 227-3201
main office:  (212) 233-9385
main office fax:  (212) 619-2340

-----Original Message-----
**From:** Paul Boylan [mailto:pboylan@donovanhatem.com]
**Sent:** Friday, June 16, 2006 10:11 AM
**To:** abuchsbaum@friedmanjames.com
**Cc:** Paul Boylan
**Subject:** RE: Kinsella

trail is over and i will call them.  as i recall it was made  clear at the mediation that  they could not  pay it all in one  lump sum.   how and when... obviously you want soonest ...  we need to discuss.
*Paul G. Boylan*
*Donovan Hatem, LLP*
*Two Seaport Lane*
*Boston, MA 02210*
*617-406-4513 (v)*
*617-406-4501 (f)*
*pboylan@dhboston.com*

**From:** Andrew V. Buchsbaum, Esq. [mailto:abuchsbaum@friedmanjames.com]
**Sent:** Wednesday, June 14, 2006 9:57 AM
**To:** Paul Boylan
**Subject:** RE: Kinsella

I understand you're on trial, but if no check by 6/28, I will obtain a judgment and seek to enforce.  Nothing personal, and I know you're trying . . .

Andrew V. Buchsbaum, Esq.
abuchsbaum@friedmanjames.com
direct dial:  (212) 227-3201
main office:  (212) 233-9385
main office fax:  (212) 619-2340

-----Original Message-----
**From:** Paul Boylan [mailto:pboylan@donovanhatem.com]
**Sent:** Tuesday, June 13, 2006 2:01 PM

# EXHIBIT E

# DONOVAN | HATEM LLP

*counselors at law*

**Paul G. Boylan**
617 406 4513  direct
pboylan@donovanhatem.com

June 23, 2006

**By Fax  212-619-2340**
Andrew V. Buchsbaum, Esq.
Friedman & James LLP
132 Nassau Street  Ste 900
New York, NY  10038

RE:   Kinsella, *et al.* v. Wyman Charter, *et al.*, C.A. No. 04-11615-NMG;
       Kinsella, *et al.* v. Insurance Co.., C.A. No. 05-10232-NMG.

Dear Andrew:

I am writing in response to your fax dated June 16.  At the time of the settlement by the Shore defendants they made it clear that they need to make payments over several installments.

I have discussed with you on June 16 a payment program starting with a payment of $35,000 by July 15.  The business which is the source of Shore income is seasonal and the rain this year has made revenues slow.  I proposed further terms of a full payment schedule with periodic payments.  You have rejected that proposal as being too lengthy in time in that one of the payments was to be made in 2008 and the other payments were to be triggered by the revenues from next season.

Before you commence what you refer to as enforcement proceedings, let me know what identified Shore assets, if any, you think are not subject already to mortgages in excess to any market value.  I have made clear to my clients that borrowing, if possible, should be done.  They are adamant that they do want to make the payments as soon as possible.  We are trying to formulate a payment schedule that is realistic and acceptable to you.  As part of that I propose to you that you accept the $35,000 payment offered on July 15, 2006, and that we continue to discuss this until the end of July and that you refrain from any court proceedings until August 15.

I have offered you to speak directly to my clients or to speak with them on a conference call with me "present."

World Trade Center East    617 406 4500  main
Two Seaport Lane     617 406 4501  fax
Boston, MA 02210    www.donovanhatem.com

Andrew Buchsbaum, Esq.
June 23, 2006
Page 2

Please let me know if this postponement of threatened action is acceptable. The $35,000 is about one third of what is due. With respect, we suggest your clients accept these funds and delay, at least for the time requested, judicial involvement.

I am urging my clients to try and accommodate you and your clients. The need for additional time has been known at all times. The fact that the Shore payment could not be made in one payment was accepted by the Kinsella plaintiffs as part of the settlement. That limitation on the ability to pay was part of the motivation for the Shore defendants to go as far as they could in making a commitment to your clients. The Kinsella agreement to reasonable time to pay is part of the Shore agreement to pay. Having made that commitment and having made clear that they need time to make the payment in full, the Shores do not want to propose or agree to a payment schedule that they will not or cannot meet.

My clients are mindful that this matter is painful and unpleasant for your clients. They do wish to cooperate and will continue to attempt to do so.

Please confirm that the $35,000 will be accepted and that you will delay any judicial proceedings at least until August 15, while you and I continue to talk.

This is not a settlement communication.

Sincerely,

Paul G. Boylan

PGB/dkk.
24100.1//1011117.

```
          **********************
          ***   TX REPORT   ***
          **********************

  TRANSMISSION OK

  TX/RX NO              1253
  CONNECTION TEL         307#24100#1#2126192340#
  CONNECTION ID
  ST. TIME              06/23 10:52
  USAGE T               00'40
  PGS. SENT                3
  RESULT                OK
```

# DONOVAN | HATEM LLP

*counselors at law*

# FACSIMILE TRANSMITTAL

Date:  June 23, 2006

Case/Matter:  24100.1

Attorney No:  307

To:

Facsimile Number:

Telephone Number:

Andrew V. Buchsbaum, Esq.
Friedman & James LLP

212-619-2340

From:  Paul G. Boylan, Esq.

Number of Pages (including cover):  3

Message

00863459

# EXHIBIT F

| Form 668 (Y)(c) | 1872 | Department of the Treasury - Internal Revenue Service |
|---|---|---|
| (Rev. February 2004) | | **Notice of Federal Tax Lien** |

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #1 (800) 829-3903 | Serial Number 294938306 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

- This Notice of Federal Tax Lien has been filed as a matter of public record.
- IRS will continue to charge penalty and interest until you satisfy the amount you owe.
- Contact the Area Office Collection Function for information on the amount you must pay before we can release this lien.
- See the back of this page for an explanation of your Administrative Appeal rights.

Name of Taxpayer
        JOSEPH J & CARLYN A SHORE

Residence
        1418 COMMONWEALTH AVE
        NEWTON, MA 02165-2830

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/1990 | 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 | 09/19/2005 | 10/19/2015 | 37903.07 |
| 1040 | 12/31/1991 | 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 | 09/19/2005 | 10/19/2015 | 39283.78 |
| 1040 | 12/31/1992 | 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 | 09/19/2005 | 10/19/2015 | 36920.25 |
| 1040 | 12/31/1993 | 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 | 09/19/2005 | 10/19/2015 | 30464.25 |
| 1040 | 12/31/1994 | 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 | 07/18/2005 | 08/17/2015 | 15975.00 |
| 1040 | 12/31/1995 | 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 | 07/18/2005 | 08/17/2015 | 12950.43 |

| Place of Filing | | |
|---|---|---|
| Registry of Deeds Southern Middlesex County E. Cambridge, MA 02141 | Total | 173496.78 |

This notice was prepared and signed at _____ MANHATTAN, NY _____ , on this,

the 02nd day of June , 2006 .

| Signature R. A. Mitchell for THERESA HARLEY | Title ACS (800) 829-3903 | 21-00-0008 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 3 - Taxpayer's Copy

CAT. NO 60025X
Form **668 (Y)(c)** (Rev. 02-04)

# EXHIBIT G

# FRIEDMAN & JAMES LLP

### ATTORNEYS AT LAW
### 132 NASSAU STREET
### SUITE 900
### NEW YORK, NY 10038

(212) 233-9385

FAX (212) 619-2340

www.friedmanjames.com

BERNARD D. FRIEDMAN
JOHN P. JAMES
ANDREW V. BUCHSBAUM

NEW JERSEY OFFICE
200 CRAIG ROAD
MANALAPAN, NJ 07726
(732) 431-1978

June 26, 2006

**By Telefax (617-406-4501) & First Class Mail**
Paul G. Boylan, Esq.
Donovan Hatem LLP
World Trade Center East
Two Seaport Lane
Boston, MA  02210

Re:     *Joseph A. Kinsella, as Administrator, et al. v. Wyman Charter Corp., et al.*
U.S. District Court, D. Mass., Civil Action No. 04-11615-NMG
(consolidated)

Dear Mr. Boylan:

I reviewed your letter dated June 23, 2006. The vague payment terms which your clients suggest are unacceptable. Your clients entered into the Settlement Agreement after extensive mediation, with the advice of counsel and following a full and fair opportunity to consider the terms of the Agreement. The Agreement requires immediate payment and no payment terms were included in the Settlement Agreement which your clients signed. I have no doubt that the Court will summarily enforce the terms of the Settlement Agreement and require immediate payment from your clients.

We have also performed a title search regarding your clients' property located at 1418 Commonwealth Avenue. Our investigation reveals that the fiscal year 2006 assessment is $2,439,200. Even taking into account the homestead declarations, federal tax lien and mortgages, there is more than sufficient equity in that property to allow your clients, whether voluntarily or not, to pay their portion of the settlement in a timely manner, not taking into account any other sources of income or assets.

Paul G. Boylan, Esq.                                          June 26, 2006
Donovan Hatem LLP                                                    Page 2

      We intend to proceed to enter judgment forthwith and do not intend to wait. Any payments which your clients make before judgment is entered will be credited against the judgment and will forego interest to the extent any payment is made pre-judgment. I also intend to request costs and attorneys' fees for your clients' bad faith actions in refusing to promptly pay their obligations pursuant to the Agreement. Please advise your clients accordingly.

                          Very truly yours,

AVB:eso                                    Andrew V. Buchsbaum

cc:    **By Telefax (617-542-2241) & First Class Mail**
       Sarah B. Herlihy, Esq.
       Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
       One Financial Center
       Boston, MA  02111

# EXHIBIT H

1 of 1 DOCUMENT

**Vladislav Kroutik v. Momentix, Inc. et al. n1**

**n1 Milton Herbert, Braden Bohrmann, Howard Anderson and Charles Forman.**

**01–2895 BLS**

**SUPERIOR COURT OF MASSACHUSETTS, AT SUFFOLK**

*2003 Mass. Super. LEXIS 112*

**April 2, 2003, Decided**

**DISPOSITION:** [*1] Plaintiff's Motion for Summary Judgment on Counterclaims of Momentix, Inc. and Milton Herbert allowed. Defendants Milton Herbert, Braden Bohrmann, Howard Anderson and Charles Forman's Motion for Summary Judgment allowed.

**JUDGES:** Allan van Gestel, Justice of the Superior Court.

**OPINIONBY:** Allan *Van Gestel

**OPINION:** MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on two motions for summary judgment: the motion of the plaintiff, Vladislav Kroutik ("Kroutik"), for summary judgment on the counterclaims of Momentix, Inc. ("Momentix") and Milton Herbert ("Herbert"); and the motion for summary judgment on Counts VIII, IX, X and XI of the defendants Herbert, Braden Bohrmann ("Bohrmann"), Howard Anderson ("Anderson") and Charles Forman ("Forman").

BACKGROUND

In December 1988, Kroutik founded Momentix, a Delaware corporation with its principal place of business in Boston, Massachusetts. Momentix was a start-up software company that delivered and hosted internet applications for the events industry.

In order to implement its business plan, Momentix received financing from a number of sources. In June 1999, Treacy Ventures, [*2] LLC invested $200,000. In December 1999, Masthead Venture Partners, LLC ("Masthead") and others invested $1,480,000 in what was called the "Series A Round." One year later, in December 2000, YankeeTek Partners, L.P. ("YankeeTek"), Masthead and others invested $2,948,292 in what was called the "Series B Round."

Bohrmann, a partner in Masthead, joined the Momentix board in December 1999, as part of the Series A Round of financing.

In August 2000, Herbert became the president and chief executive officer of Momentix. He became a board member in conjunction with the Series B Round of financing. At the same time, Anderson, a partner with YankeeTek, also became a director. Kroutik's title then was changed to "Chairman and Founder."

Forman was an independent director of Momentix, selected by the other members of the board.

Kroutik's employment with Momentix was terminated on May 31, 2001. Thereafter, Kroutik initiated this action against Momentix and the members of its board of directors—Herbert, Bohrmann, Anderson and Forman—who had voted to terminate him. Kroutik alleged a breach of contract and wrongful termination.

Herbert filed a counterclaim against Kroutik for breach of fiduciary [*3] duty. Momentix also filed counterclaims for breach of fiduciary duty, fraud, negligent misrepresentation, breach of contract, tortious interference with business relations and business defamation.

On December 17, 2001, before Attorney J. Own Todd, the parties mediated this case and reached a settlement. The settlement was initially memorialized in a handwritten memorandum entitled "Heads of Agreement." The entire memorandum reads as follows:

1. 125,000 lump sum payment to Kroutik by February 15, 2002 delivered to Ann Donovan [counsel for Kroutik] by 5:00 p.m.

2. All litigation dismissed with prejudice including:

a) *Kroutik v. Momentix, et al.* (Suffolk County)

b) *YankeeTek v. Kroutik* (Essex County)

c) MCAD Complaint

3. Waiver of non-compete in Kroutik's employment

agreement

4. Kroutik retains 6,000,000 shares of Momentix common stock, to be placed in a voting trust, trustee to be Braden Bohrmann.

5. Momentix reimburses Kroutik for past 7 months of health and dental insurance (approx. $2,100) within 60 days, and will pay 100% of Kroutik's health and dental insurance through May 2002 (5 additional months).

6. Mutual non-disparagement provision

7. Kroutik [*4] resigns from board.

8. Momentix indemnifies Kroutik, pursuant to Article V of the By-Laws, for any claims brought against Kroutik arising out of the same or similar claims as those asserted by Momentix in the Suffolk action and/or YankeeTek in the Essex action. This indemnification shall include payment of attorneys fees as described in Article V.

9. Momentix to reimburse Kroutik approximately $3,000 for Hawaii trip and three expense reports by Feb. 15, 2002. Kroutik will return his Momentix issued laptop computer when the $3,000 is reimbursed.

10. Momentix will cooperate with Kroutik with respect to his DET claim for unemployment compensation, to the extent that such cooperation does not require Momentix to contradict its prior testimony before the DET or to provide wrongful testimony.

11. Mutual general releases between Kroutik on the one hand and Momentix, Herbert, Bohrmann, Forman, Anderson, YankeeTek and Masthead on the other hand.

The memorandum was signed by counsel for Kroutik, counsel for Momentix and Herbert, and Kroutik himself, and was dated "12/17/01." Below these signatures is a sentence that reads: "Counsel for Bohrmann, Forman, Anderson and YankeeTek was present [*5] for the negotiation and agreed to these terms as they affect his clients." This sentence is followed by what is presumed to be counsel's signature.

On February 14, 2002, the parties executed a more formal, typed document entitled "Settlement Agreement." The Settlement Agreement is not, in every respect, exactly the same as the Heads of Agreement. It is, however, signed by each of the parties individually and in their various representative capacities. The Court here will not set forth the entire Settlement Agreement, but rather will quote from parts thereof that are relevant to the present issues.

1. Within fifteen days after its counsel has received a copy of this Agreement signed by Kroutik, Momentix

shall deliver to Kroutik's attorney a certified or bank check in the amount of $125,000, made payable to "Ann M. Donovan as attorney for Vladislav Kroutik." If the payment is not received by Kroutik's attorney within fifteen days, Momentix shall add $100 per day to the total amount of the payment as consideration for Kroutik's acceptance of the late payment . . .

4. Within one week of his attorney's receipt of the payment described in paragraph 3 hereof [relating to unreimbursed [*6] expenses], Kroutik's attorney shall return to Momentix's attorney the laptop computer that he was issued as an employee of Momentix, along with all data and files belonging to Momentix or in any way related to the business of Momentix, and any peripheral hardware and software purchased by Momentix.

5. Within one week after the receipt by Kroutik's attorney of the payments described in paragraphs 1, 2 and 3 hereof, and the receipt by Momentix of Kroutik's laptop computer . . . the parties shall file all stipulations necessary to dismiss [all of the litigation between them] with prejudice and waive all rights of appeal, each party to bear its own costs.

Kroutik executed the Settlement Agreement on February 14, 2002, and it promptly was delivered to counsel for Momentix. Kroutik also dismissed, with prejudice, all counts of his original complaint arising from his termination from Momentix and his claims at the MCAD and EEOC. Additionally, he resigned from the board of directors of Momentix.

Although Kroutik did return the laptop computer to Momentix, it is alleged by Herbert that the computer's hard drive had been cleared of all of its applications, files and data, including, but [*7] not limited to, the proprietary software for Momentix's applications, all Kroutik's work-in-process on the Momentix applications, and all Kroutik's e-mails.

Anderson and the various YankeeTek entities have now dismissed the Essex litigation.

Momentix and Herbert, however, have not dismissed their counterclaims against Kroutik. More significantly, the $125,000 payment was never made to Kroutik. Rather, on April 9, 2002, after delaying on the payment, Herbert, Anderson, Bohrmann and Forman held a directors' meeting and voted to cause Momentix to enter into an assignment for the benefit of creditors. Momentix, as a result, is now defunct and no counsel representing it appeared at the hearing on these motions or submitted any written positions thereon. It was after this that Kroutik filed a first amended complaint containing new counts related to the alleged breach of the Settlement Agreement.

2003 Mass. Super. LEXIS 112, *7

There is some history leading up to the vote to have Momentix enter into the assignment for the benefit of creditors.

In early December 2001, it was anticipated that YankeeTek would lead a Series C Round of financing for Momentix. In anticipation of that financing, Anderson caused YankeeTek [*8] to make three loans to Momentix. The first two loans, in the amount of $225,000 each, were made on December 3, 2001, and February 5, 2002. The third loan, in the amount of $75,000, was made on March 12, 2002.

On February 26, 2002, Momentix requested YankeeTek to advance $125,000 to pay for the settlement with Kroutik. Several days later, on March 4, 2002, YankeeTek, by Anderson, decided not to advance the requested funds.

Also, in the first few days of April 2002, YankeeTek decided that it would not participate in the proposed Series C Round of financing for Momentix. The defendants contend that this was the reason that the assignment for the benefit of creditors was voted.

As a result of the assignment, not only was Kroutik not paid his $125,000, YankeeTek and Masthead lost their investments of $2 million and $1.1 million respectively, and none of YankeeTek's $525,000 in loans was ever repaid.

DISCUSSION

Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. *Hakim v. Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 281, 675 N.E.2d 1161 (1997); *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 716, 575 N.E.2d 734 (1991); [*9] *Cassesso v. Commissioner of Correction*, 390 Mass. 419, 422, 456 N.E.2d 1123 (1983); *Mass.R.Civ.P. Rule 56(c)*. On each of the two motions here, the moving parties, bear the burden of affirmatively demonstrating that there are no material triable issues of fact. *Pederson v. Time Inc.*, 404 Mass. 14, 17, 532 N.E.2d 1211 (1989).

*Kroutik's Motion Against Momentix*

Before addressing the details of the motions, the Court observes that Momentix, Inc. failed to respond to Kroutik's motion in any way. For that reason alone, Kroutik's motion for summary judgment on Momentix's counterclaims will be allowed.

*Kroutik's Motion Against Herbert n2*

n2 *The Court notes that Herbert's counterclaim*

*against Kroutik is for breach of fiduciary duty of one corporate director to another. Having in mind that Momentix is a Delaware corporation, Herbert's claim is tenuous at best. Also, much of what his counterclaim sets forth seems not to be personal in nature, but rather derivative on behalf of the corporation itself*

[*10]

*The parties, including Herbert, reached a settlement of all claims on December 17, 2001, and outlined that settlement in the Heads of Agreement. Thereafter, all parties reported to the Court that the case had been settled and a January 28, 2002, jury trial was cancelled at the parties' request. On February 14, 2002, the more formal Settlement Agreement was executed. Each of the Heads of Agreement and the Settlement Agreement called for all litigation between and among the parties to be dismissed with prejudice.*

*Kroutik dismissed his claims against Herbert and the others, and Anderson and YankeeTek have dismissed their claims against Kroutik. Only Herbert has failed to dismiss his counterclaim against Kroutik. n3*

n3 *Until these motions, of course, Momentix had aligned itself with Herbert in failing to dismiss its counterclaims against Kroutik.*

*Herbert points to two things as justification for his refusal to dismiss his counterclaim: (1) the allegation that when Kroutik returned the laptop computer, the computer's [*11] hard drive had been cleared of all its applications, files and data, including but not limited to the proprietary software for Momentix's applications, all Kroutik's work-in-process on the Momentix applications, and all Kroutik's e-mails; and (2) the fact that Kroutik was not paid the $125,000.*

*At this time, of course, Momentix is a defunct, non-operating corporation that ended up in that status not because of any action by Kroutik, but rather because its directors, including Herbert, caused it to enter into an assignment for the benefit of creditors. Indeed, all of the defendants, including Herbert, argue with some vigor that it was Momentix's strained economic plight that caused—and they say justified—the assignment.*

*Whatever may have been the condition of the laptop computer when returned by Kroutik to Momentix, it hardly can be cited by Herbert as justification for him to cling to his personal counterclaim against Kroutik. Under the circumstances at the time, the situation with the laptop does not rise to a material breach of the Settlement Agreement*

*on the part of Kroutik. Providing the extra information, assuming it existed and was not provided, to a corporation in such* [*12] *economic extremis* as Herbert contends was the case with Momentix, is hardly "a breach of an essential and inducing feature of the" Settlement Agreement. See *Lease–It, Inc. v. Massachusetts Port Authority, 33 Mass.App.Ct. 391, 397, 600 N.E.2d 599 (1992).*

And the failure to pay Kroutik the agreed-upon $125,000 is an even more slender reed for Herbert to lean upon.

Also, of course, the settlement here was reported to the Court and a jury trial was cancelled as a result. "By reporting to the court that the case was settled, [Herbert] signaled that [he] had gone beyond deciding whether to give up a right to trial in exchange for the plaintiff's offer . . . This is not a case in which an essential term has been left to the later agreement of the parties . . . Nor is this a case in which the party repudiating the settlement claims that [he] was deceived by the other side as to a material fact supporting the agreement." *Correia v. DeSimone, 34 Mass.App.Ct. 601, 603, 614 N.E.2d 1014 (1993).*

Protection of the integrity of the judicial process "would be ill served if those intimately involved in that process, litigants, attorneys, and judges, could [*13] not rely on declarations of settlement made to the court . . . It defies logic and fundamental principles of fairness to allow a represented party who has sought justice in a forum to contradict and undermine an agreement it reached and acknowledged in that same forum, especially when the judge and the other litigants appear to have relied on that acknowledgment." *Id. at 604.*

Kroutik's motion for summary judgment dismissing Herbert's counterclaim will be allowed.

*Herbert's, Bohrmann's, Anderson's and Forman's Motion Against Kroutik*

This motion attacks Counts VIII, IX, X, and XI, which are the only remaining counts in Kroutik's amended complaint. n4 Count VIII is against all defendants for breach of the Settlement Agreement. Count IX is against all defendants for breach of the covenant of good faith and fair dealing with regard to the Settlement Agreement. Count X is against Herbert, Anderson, Bohrmann and Forman and seeks to pierce the corporate veil. Count XI is against Anderson only, for inducement to breach the Settlement Agreement.

> *n4 Counts I through VII were dismissed by a stipulation dated December 13, 2001. See Paper No. 52. As a result of the dismissal of the Essex action, Kroutik announced his agreement to the dismissal of his Count XII, with prejudice, at the*

*hearing on these motions.*

[*14]

The Settlement Agreement, in paragraph 19, states that it "contains the entire understanding between the Parties and supersedes any prior understandings and agreements between them, except as expressly set forth herein." See *Schwanbeck v. Federal–Mogul Corp., 31 Mass.App.Ct. 390, 411, 578 N.E.2d 789 (1991).* "Agreements are made to be performed, and relief should be given in the absence of special circumstances showing that it would be inequitable to do so." *Freedman v. Walsh, 331 Mass. 401, 406, 119 N.E.2d 419 (1954).* No special circumstances have been demonstrated here. Consequently, this Court, in assessing this motion, will be guided by the language in the Settlement Agreement and not that included in the Heads of Agreement previously executed.

Counts VIII and IX may be discussed together. They each are against all of the defendants. Count VIII charges a breach of the Settlement Agreement and Count IX charges breach of the implied covenant of good faith and fair dealing in connection therewith.

What needs to be determined is whether any of the moving parties—Herbert, Bohrmann, Anderson or Forman—breached the Settlement Agreement. The breach, [*15] of course, is the failure to pay Kroutik the $125,000 called for in paragraph 1 thereof. Although quoted above, paragraph 1 bears repeating here. It reads in material part:

Within fifteen days after its counsel has received a copy of this Agreement signed by Kroutik, *Momentix shall deliver* to Kroutik's attorney a certified or bank check in the amount of $125,000, made payable to "Ann M. Donovan as attorney for Vladislav Kroutik." If the payment is not received by Kroutik's attorney within fifteen days, *Momentix shall add $100 per day to the total amount of the payment* as consideration for Kroutik's acceptance of the late payment . . .

(Emphasis added.)

The emphasized portions make clear that the payment is to be made by Momentix, not by all defendants as a group. Nothing in the Heads of Agreement suggests to the contrary. Its first sentence read: "125,000 lump sum payment to Kroutik by February 15, 2002 delivered to Ann Donovan by 5:00 p.m."

It was Momentix that employed Kroutik, on whose board he sat, and whose stock he owned. The other defendants were the chief executive officer and the members of the board of directors, other than Kroutik, who voted to

terminate [*16] Kroutik's employment. In the Settlement Agreement it is Momentix, not the other defendants, that is obligated to make the additional payments called for in paragraphs 2 and 3; to whom Kroutik must return the laptop computer (para. 4); from whose board Kroutik must resign (para. 7); that indemnifies Kroutik (para. 8); that must support Kroutik's DET appeal (para. 9); whose trade secrets and proprietary information Kroutik must not disclose (para. 11); and whose lease agreements for equipment Momentix must pay to avoid triggering personal guarantees of Kroutik (para. 12).

When there are to be obligations or actions taken by the other defendants they are individually or collectively named. See, e.g., Settlement Agreement, paras. 5, 6, 10, 13, 14, 18 and 19.

Indeed, Kroutik said as much in his deposition.

Q. The mediation took place on December 17, as we said, about a year ago, as you left the mediation, did you have an understanding as to how the one hundred twenty–five thousand dollars was to be paid, who was to pay you?

A. Can you phrase the question again?

Q. The question is as you left the mediation, did you have an understanding about what person or entity was to pay you the [*17] one hundred twenty-five thousand dollars?

A. Yes.

Q. What was that understanding, sir?

A. A hundred twenty-five thousand dollars to be paid by Momentix by February 15.

Thus, the only defendant that breached the Settlement Agreement insofar as the $125,000 payment to Kroutik is concerned was Momentix itself. Count VIII must be dismissed as against all other defendants.

Without a breach of the contract, there can be no claim for a breach of an implied covenant of good faith and fair dealing. The requirement of good–faith performance, under the implied covenant of good faith and fair dealing, ultimately is circumscribed by the obligations actually contained in the agreement. *AccuSoft Corp. v. Palo, 237 F.3d 31 (1st Cir. 2001).* "A duty of good faith and fair dealing is implicit in the performance of a party's contractual obligations . . ." *Lafayette Place Associates v. BRA, 427 Mass. 509, 525 (1998).* However, there must be a contractual duty to do something, or to refrain from doing something, to trigger the implied covenant of good faith and fair dealing. *Id. at 526.* The Court cannot, through the vehicle of the implied covenant, [*18] add obligations to a contractual undertaking that the parties did impose on themselves.

To the extent that Count IX relates not to the failure to pay, but rather to the defendants' actions as Momentix's directors in voting to enter into an assignment for the benefit of creditors, it fails because of Delaware law and its business judgment rule. *Harrison v. Netcentric Corporation, 433 Mass. 465, 470–72, 744 N.E.2d 622 (2001),* mandates that in assessing matters relating to the internal affairs of a corporation—such as here, the vote of the board of directors—the law of the state of incorporation applies. Momentix is a Delaware corporation. Thus, on this issue, Delaware law controls.

The business judgment rule, as expressed by the Delaware courts protects the actions of directors like those here. "The business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." *Unocal Corporation v. Mesa Petroleum Co., 493 A.2d 946, 954 (Del. 1985).* Kroutik has shown nothing to rebut the presumption [*19] here. See, e.g., *In re Gaylord Container Corp. Shareholder Litig., 753 A.2d 462, 473–77 (Del.Ch. 2000); Cinerama, Inc. v. Technicolor, Inc., 633 A.2d 1156, 1162–65 (Del. 1995).*

Again, Kroutik's deposition testimony is instructive.

Q. Do you believe that the decision to make an assignment for the benefit of creditors was a reasonable one?

A. I don't know.

Q. You just don't know?

A. I don't know.

Q. Because you lacked enough information?

A. I don't know. I don't know. I don't know about the decision.

Q. All right. You just don't have enough information about the decisions or about the—

A. Experience or information.

Q. Okay. And you are not aware of the information that was known to the board of directors at the time they voted to make the assignment for the benefit of creditors, isn't that right?

A. No.

Q. Is that correct?

A. Yes

Count IX cannot stand, except as against Momentix.

Count X is against Herbert, Anderson, Bohrmann and Forman and seeks to pierce the corporate veil. Kroutik argues that this case presents the unique type of situation envisioned to allow imposing liability on the directors "to prevent gross inequity." *Evans v. Multicon Construction Corp., 30 Mass.App.Ct. 728, 732, 574 N.E.2d 395 (1991).* [*20] Kroutik asserts that the inquiry in any piercing-the-corporate-veil case is fact intensive, citing to *Crane v. Green & Freedman Baking Co., 134 F.3d 17, 21 (1st Cir. 1998).*

*Evans, at 732–33,* provides the background for the analysis to follow.

In "rare particular situations to prevent inequity," disregard of separate corporate entities may be warranted, i.e., it is permissible to pierce the corporate veil. *My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 620, 233 N.E.2d 748 (1968).* Occasion for doing so arises when (1) there is active and pervasive control of related business entities by the same controlling persons and there is a fraudulent or injurious consequence by reason of the relationship among those business entities; or (2) there is "a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." *Id. at 619.*

A review of Count X, particularly paras. 87 through [*21] 97, much like Herbert's counterclaim, reveals what is in great part a derivative claim on behalf of Momentix against four of the company's directors, not a personal claim by Kroutik. Additionally, it makes allegations about how the four accused directors ran the company "from Vladislav Kroutik's termination on May 31, 2001 to April 9, 2002." This overlooks completely the fact that the parties executed a Settlement Agreement on February 14, 2002, and pursuant thereto thereafter dismissed all claims between and among each other, except for Herbert's counterclaim and Momentix's counterclaims.

The parties also stated in their Settlement Agreement, which is attached to the amended complaint, in paras. 13 and 14, that Kroutik and all of the defendants released each other from all claims. The broadest of release language was used.

The legal consequence of the Settlement Agreement and the releases therein is that only actions taken or not taken after February 14, 2002, are open in this litigation. So the Court must assess the piercing-the-corporate-veil contentions in that light.

Hearkening back to *Evans* quoted above, the Court finds nothing showing "active and pervasive control of

[*22] related business entities by the same controlling persons *and . . .* a fraudulent or injurious consequence by reason of the relationship among those business entities." Nor is there anything that supports a claim of "a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." Certainly, the actions of the directors at the April 9, 2002, board meeting would not form an adequate legal basis to pierce the corporate veil.

Veil piercing is not warranted in a case involving a breach of contract. See, e.g., *Birbara v. Locke, 99 F.3d 1233, 1238 (1st Cir. 1996).* And here, of course, it is just Momentix that committed the breach by not paying Kroutik the agreed–upon $125,000.

Further, "allegations that [the defendants here] controlled the company, [were large stockholders and one was the chief executive officer] are insufficient to pierce the corporate veil." *Saveall v. Adams, 36 Mass.App.Ct. 349, 353, 631 N.E.2d 561 (1994).* [*23] See also *Spaneas v. Travelers Indemnity Co., 423 Mass. 352, 354, 668 N.E.2d 325 (1996); Greenery Rehabilitation Group, Inc. v. Antaramian, 36 Mass.App.Ct. 73, 79, 628 N.E.2d 1291 (1994).*

Count X cannot stand on the record before the Court.

The final count, Count XI, is against Anderson only. It charges him with inducement to breach the Settlement Agreement. Again, there are allegations of actions in the time period "from Vladislav Kroutik's termination on May 31, 2001 to April 9, 2002," that, given the Settlement Agreement, seem beyond the permissible reach of this case.

Basically, what Count XI is really all about appears in paras. 101 through 103. There Kroutik says:

Howard Anderson on or about March 4, 2002 made the decision not to advance the $125,000 requested by Momentix, Inc. for Vladislav Kroutik's settlement. Howard Anderson and others at YankeeTek on or about April 5, 2002 decided not to go forward with the Series C Round of financing for Momentix, Inc. Howard Anderson induced Momentix, Inc. to breach the Settlement Agreement with Vladislav Kroutik.

Howard Anderson was under no legal or contractual obligation, either on his own or as [*24] a partner of YankeeTek, to advance the $125,000 requested by Momentix for the Kroutik settlement payment; or to go forward with the Series C Round of financing for Momentix, Inc.

Did Anderson induce Momentix, Inc. to breach the Settlement Agreement with Vladislav Kroutik?

Kroutik's opposition to the motion spells out more clearly than his amended complaint just what it is that he is accusing Anderson of in Count XI. He says, at p. 15 thereof:

Anderson's and YankeeTek's last minute decision not to participate in the Series C financing induced Momentix to breach the Settlement Agreement. Anderson ignored and breached his fiduciary duties as a director of Momentix and instead made a decision, which he believed was in the best interest of his Yankeetek venture capital firms. His improper motives also included securing pre-existing loans to Momentix to get ahead of creditors like Kroutik because who besides Howard Anderson knew the end was coming for Momentix.

As noted twice before, once again a count of the amended complaint brought individually has the aroma of a derivative claim. Here, also, Kroutik seems to blur the very real difference between Anderson, the individual, and the [*25] YankeeTek entities. None of the YankeeTek entities are parties to this litigation and nothing in the amended complaint suggests that those entities are Anderson's alter ego.

In his opposition, as noted above, Kroutik says that Anderson "induced" Momentix to breach the Settlement Agreement. He then says that the inducement was "YankeeTek's last minute decision not to participate in the Series C financing." The breach, of course, if it can be characterized as such, is that because Momentix entered into an assignment for the benefit of creditors it made itself unable to pay $125,000 to Kroutik.

Certainly Anderson personally—and, of course, any YankeeTek entity—gained nothing from the Momentix assignment for the benefit of creditors. Indeed, although they are not parties to this case, the YankeeTek entities suffered economic losses vastly greater than Kroutik when Momentix made its assignment.

Assuming the count called "inducement to breach" is effectively a claim of intentional interference with contractual relations, there must be evidence that any interference was improper in means or motives. *Hunneman*

*Real Estate Corporation v. The Norwood Realty, Inc.* 54 *Mass.App.Ct.* 416, 426–27, 765 N.E.2d 800 (2002); [*26] *United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 812, 816, 551 N.E.2d 20 (1990).

There is nothing in the record that demonstrates that Anderson used any improper means or motives when YankeeTek—which had no legal obligation to do so—declined to lend Momentix $125,000 in March 2002. Similarly, there is nothing in Anderson's action as a director in voting, along with the other directors, on April 9, 2002, to cause Momentix to enter into the assignment for the benefit of creditors that fits the definitions of improper motives or methods as applied by the Massachusetts appellate courts.

Count XI fails as well.

ORDER

For the foregoing reasons the Plaintiff Vladislav Kroutik's Motion for Summary Judgment on Counterclaims of Momentix, Inc. and Milton Herbert is *ALLOWED,* and the Motion for Summary Judgment of Milton Herbert, Braden Bohrmann, Howard Anderson and Charles Forman is also *ALLOWED* as to the claims against them.

All counts of the amended complaint and all counterclaims are now being resolved, except for Counts VIII and IX as against Momentix. Momentix is said by the parties to be "defunct," which the Court takes to mean out of business and [*27] with not assets. That being the case, Kroutik might consider dismissing Counts VIII and IX against Momentix. Or, in the alternative, Kroutik might consider proceeding with summary judgment against Momentix. The Court is interested in getting the case in a posture wherein a final judgment can be entered so that the parties, if any of them choose, can exercise their rights of appeal. The Court is disinclined, given the present status of the case, to grant an order pursuant to *Mass.R.Civ.P. Rule 54(b)*.

Allan van Gestel

Justice of the Superior Court

DATED: April 2, 2003